OPINION OF THE COURT
William M. Simon, J.
This court must first determine if it had jurisdiction to conduct a trial in this matter over a “traffic infraction” allegedly committed in the Village of Tannersville (a village with its own court) and within a private vehicle that was on a trip that commenced in the Town of Hunter, traveled through the village where the offense was allegedly committed (not within 100 yards of its boundary with the Town of Hunter) and the trip then continued back into the Town of Hunter without stopping. No one raised any issue of jurisdiction or venue during the trial. The testimony and evidence were as follows:
*49 A uniform traffic ticket was issued to the defendant on January 15, 2002 alleging that the defendant failed to stop and yield when making a right turn on red in violation of Vehicle and Traffic Law § 1111 at the intersection of Route 23C and Route 23A in the Town of Hunter. A supporting deposition filed on February 26, 2002 recites the defendant was operating a vehicle on “A public highway in the Town of Hunter.” Based upon the uniform traffic ticket and the supporting deposition the court began a trial.
At trial the officer testified that there is and was a traffic light with a red light facing Route 23C that when he approached said intersection on Route 23A in the Town of Hunter, Greene County, and was 50 to 100 feet from the intersection by the Chinese restaurant, he observed the defendant operating a private passenger Audi 2000 automobile bearing passenger registration plate number FK583P going south on Route 23C, and that the car passed the red light without stopping and/or yielding to his vehicle and turned right in a westerly direction onto Route 23A at the intersection, causing the deputy, who was traveling on Route 23A west, to apply his brakes and slow down. He continuously followed the defendant who ignored his lights until eventually she was pulled over by Mitchell Road on Route 23A in the Town of Hunter. The defendant upon being stopped exclaimed to the officer “Please Please let me go, I won’t do it again.”
The defendant took the stand and testified that she was traveling from home, which is in Onteora Park within the Town of Hunter. She was with her child in the car; she is a very safe and careful driver and is always very careful when her child is in the car. Route 23C is a steep hill and she was going down the hill; it was wintertime and there was ice on the right side of the road. She knew there was ice there so she stopped her vehicle at a point at least 10 feet north of the edge of the building line. From that point she could not see the deputy’s vehicle traveling westbound. She could not see very far onto Route 23A to see traffic from the point where she was stopped. She states that she had a red light facing her. She proceeded from the point about 10 feet north of the building line through the red light southbound without stopping, making a right turn onto Route 23A west. She did not stop at the light because she was afraid she might skid on the ice. She first noticed the deputy’s vehicle when she was already on Route 23A.
She introduced a photo into evidence as exhibit 1 which she testified was taken on the date of the ticket. The photo depicts *50 Route 23C at the traffic light; there appears to be a substance on the right shoulder. She testified that the substance was ice.
Under questioning by the court the defendant admitted making the statement “Please please let me go I won’t do it again” to the officer when she was stopped.
On cross-examination by Deputy Bolz, using the picture (exhibit 1) it was pointed out by the Deputy and defendant agreed that there are two lanes southbound on Route 23C, the right-hand lane is a separate and distinct right turn lane for southbound traffic on Route 23C at the traffic light with a large right turning arrow painted in white on the pavement. The picture reveals no ice at all and purely dry pavement in the two southbound lanes and more particularly in the right turn lane. The substance that appears to be ice is outside of the traveled way to the right of the right-hand lane. The defendant admitted that she was to the right of the right turning lane when she made her turn.
Both sides rested.
The court on its own knowledge must take judicial notice of the fact that the intersection of Route 23C and Route 23A is technically within the Town of Hunter as testified to, yet it is also within the Village of Tannersville, a Village that this Judge knows has its own Village Court. However, Mitchell Road, where the defendant’s vehicle was pulled over, is in the Town of Hunter and not in the Village of Tannersville. Likewise, Onteora Park is within the Town of Hunter but not in the Village of Tannersville. This court also takes judicial notice of the fact that both the municipality of the Town of Hunter and the municipality of the Village of Tannersville are totally within Greene County of the State of New York.
The Criminal Procedure Law determines criminal jurisdiction in the Justice Courts (see UJCA 2001).
CPL 100.55 (4) recites in pertinent part that “a simplified information * * * may be filed with a town court of a particular town when an oifense charged therein was allegedly committed anywhere in such town other than in a village thereof having a village court.”
CPL 100.55 never uses the word jurisdiction even though the Practice Commentaries in McKinney’s Consolidated Laws of NY, Book 7 seem to suggest that section 100.55 is jurisdictional. The statute uses the word “may” instead of “must” when indicating where to file.
*51 It is further noted in CPL 100.55 (8) and (9) that this statute does not preclude the filing of an accusatory instrument in another court if permitted by another statute.
CPL 100.55 (10) defines where to file in certain instances when there are multiple places to file and permits one to file the accusatory instrument in a municipality wherein the offense was not technically committed under certain circumstances; it is this section that applies to the situation encountered in this trial and is determinative of this question. The statute states at subdivision (10): “For purposes of this section, an offense is committed in a particular county, city, town, village or other specified political subdivision or area, not only when it is in fact committed therein but also when it is, for other reasons specified in sections 20.40 and 20.50, prosecutable in the criminal courts having jurisdiction over such political subdivision or area.” (Internal quotation marks omitted.)
The court must consider if a “traffic infraction” is an “offense” within the meaning of the various cited sections. For the reasons stated below I find that “traffic infractions” are in fact “offenses” within the meaning of the cited sections.
CPL 1.20 (39) defines “Petty Offense” as a “violation or a traffic infraction.”
Further evidence that a traffic infraction is an offense is contained in section 100.10 (2) (a) which defines a simplified traffic information and refers to the traffic violation as “offenses.”
Penal Law § 10.00 (1) defines “Offense” as “conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law, local law or ordinance of a political subdivision of this state, or by any order, rule or regulation of any government instrumentality authorized by law to adopt the same.”
Since the Vehicle and Traffic Law is a state law that imposes a fine for the conduct, then such laws or sections of law are describing “offenses.”
Penal Law § 10.00 (2) defines “Traffic infraction” as “any offense defined as Traffic infraction’ by section one hundred fifty-five of the Vehicle and traffic law.” (Vehicle and Traffic Law § 155 defines all violations of this chapter as “Traffic infractions” unless it is a misdemeanor.)
Since a “traffic infraction” is described as “any offense,” once again the court must conclude a traffic infraction is an “offense.”
*52 There can be no legal basis to conclude other than a “traffic infraction” is an “offense.”
Therefore this court determines that this court’s jurisdiction over every offense is granted to it by sections 20.40 and 20.50 of the Criminal Procedure Law and that any courts, that are granted jurisdiction by virtue of CPL 20.50 and 20.40, are the proper courts within which to file the accusatory instrument and try the case under CPL 100.55.
CPL 20.50 (1) states that “The principles prescribed in section 20.40, governing geographical jurisdiction over offenses as between counties of this state, are, where appropriate, applicable to the determination of geographical jurisdiction over offenses as between cities, towns and villages within a particular county.”
A literal meaning of that section means that in a case such as this before the court where the Town of Hunter and the Village of Tannersville are two municipalities within the same county (which they are, to wit, Greene County) the court must look to CPL 20.40 and the court must read section 20.40 as if reference to county means also to any “city, town or village of a particular county.”
Criminal Procedure Law § 20.40 contains the jurisdiction as between counties. Section 20.50 says you must apply section 20.40 to the jurisdiction between “cities, towns and villages within a particular county.” What follows is the literal translation of section 20.40 with the word county removed in brackets and in its place I have in brackets inserted the language of the statute, to wit, “cities, towns and villages within a particular county.*”
“A person may be convicted in an appropriate criminal court of a particular [remove county; add cities, towns and villages within a particular county*] of an offense of which the criminal courts of this state have jurisdiction pursuant to section 20.20, committed either by his own conduct or by the conduct of another for which he is legally accountable pursuant to section 20.00 of the penal law when * * *
“4. Jurisdiction of such offense is accorded to the courts of such [remove county; add cities, towns and villages within a particular county*] pursuant to any of the following rules * * *
“(g) An offense committed in a private vehicle during a trip thereof extending through more than one [remove county; add cities, towns and villages within a particular county*] may be prosecuted in any [remove county; add cities, towns and villages within a particular county*].” *53 The asterisk indicates material in brackets that is not the wording of section 20.40 of the Criminal Procedure Law but the required insertion of words when applying the literal language of section 20.50 of the Criminal Procedure Law.
The only conclusion possible is that when an offense is committed within a private passenger car it is prosecutable in any town, or village within the same county that the car passed through during that trip.
There can be no question that in the case at bar where the offense undisputably was committed within a private vehicle that was on a trip that began in the Town of Hunter (Onteora Park) in fact traveled in the officer’s continuous view through the Village of Tannersville and then back into the Town within a single County, wherein it was stopped, fits squarely within the language conferring jurisdiction in both the Town and the Village Courts.
I therefore conclude that this case is clearly within the jurisdiction of and prosecutable in the Town of Hunter Court based upon the fact that jurisdiction of the'Town Court is derived through sections 20.50, 20.40 and 100.10 (10) of the Criminal Procedure Law that permits prosecution under particular circumstances as outlined in section 20.40 (4) (g).
Since this court did in fact have jurisdiction to conduct the trial, the court finds the defendant guilty based upon the credible evidence, beyond a reasonable doubt, of failure to stop and yield at a red light; the defendant is sentenced to pay a fine of $50 and a mandatory surcharge of $35.