*752 OPINION OF THE COURT
Jo Ann Friia, J.
Upon the defendant’s waiver of trial by jury on the misdemeanor charge “[Reaving the scene of an incident [with personal injury] without reporting” under Vehicle and Traffic Law § 600 (2) (a), the matter was scheduled for a bench trial on all charges emanating from an incident on October 31, 2005 in the city of White Plains. In addition to the misdemeanor, the defendant was also charged with Vehicle and Traffic Law § 600 (1) (a) (leaving the scene of an incident with property damage) and Vehicle and Traffic Law § 509 (1) (unlicensed operator), both violations.
The case was heard on separate dates over the course of five weeks. Throughout the proceeding, the defendant, Edilson Castanheira, was assisted by a Portugese language interpreter provided by the court. One of the People’s witnesses, Russel Rojas, an eyewitness to the incident, was assisted by the court’s staff Spanish language interpreter. In total, the People called five witnesses: Karen O’Gorman (pedestrian struck and injured by impact of motor vehicle); Russel Rojas (eyewitness/driver); Lois Morgan (eyewitness/pedestrian); Police Officer Joseph Garafolo (officer who responded to the scene); and Detective Richard Vandermealean (arresting officer/Westchester County Police Department).
For the defense, Mr. Castanheira testified himself with the aid of an interpreter, and offered the testimony of Dr. Yves LeBrun, a neurologist, who has been treating Mr. Castanheira since 2002 for “post traumatic seizure disorder.” This disorder, according to the testimony of Dr. LeBrun, causes the defendant to be prone to temporary memory loss which could last for seconds, minutes, hours or longer, and is described as similar to a person having a “mini stroke.” To control these episodes, Dr. LeBrun testified that he treats the defendant with prescription medications in regulated doses and monitored by blood tests. Dr. LeBrun saw the defendant the day after the incident, and testified that he found Mr. Castanheira to be “normal.” The defendant asserts that he has (had) no memory of the incident and believes he suffered a seizure brought on by the accident.
At the commencement of the trial and prior to the calling of the witness, the parties stipulated on the record (1) that the pedestrian, Karen O’Gorman, suffered “personal injury” within the meaning of New York’s Vehicle and Traffic Law § 600 (2) (a) and no medical records were submitted in evidence; and (2) the *753 defendant, Edilson Castanheira, was the person stopped by Detective Vandermealean on October 31, 2005 in Elmsford and he was the driver of the grey 2000 Dodge Durango, New York license plate AGP-3633.
Findings of Fact
The essential facts are not in dispute. On October 31, 2005 at approximately 4:30 p.m. just off the intersection of Mamaroneck Avenue and East Post Road in the downtown area of White Plains, a certain grey Dodge Durango sport utility vehicle (New York plate AGP-3633), while attempting a right turn from Mamaroneck Avenue onto East Post Road, struck the left rear corner of a smaller Dodge vehicle (New York plate DAL-6691) driven by one Alicia Rivas and stopped at 147 Mamaroneck Avenue allowing a pedestrian to cross the street at East Post Road. The force of the impact from the Durango caused the smaller vehicle to further strike the crossing pedestrian. The pedestrian, Karen O’Gorman, was propelled forward onto the hood and windshield of the smaller Dodge and then fell onto the ground in the road. A pedestrian eyewitness, Lois Morgan, standing at the corner, testified that she had a clear view of the crossing pedestrian and the two vehicles involved in the accident. Ms. Morgan testified that she saw the collision and the pedestrian “fly into the air” and the grey Dodge Durango take off down East Post Road without stopping. This witness went to the injured pedestrian and told her to “stay down” until help arrived.
The testimony of the injured pedestrian was simply that, while stepping off the curb to cross the street at the corner of East Post Road to “mail a letter” at the mailbox, she heard a crash and before she could look up, she was hit and “thrown into the air . . . and fell to the middle of the street.” She vividly recalled the incident and noted her injuries on direct examination.
The incident was also observed by the driver of a vehicle stopped at a red traffic light on Mamaroneck Avenue. Russel Rojas testified that he had a clear and unobstructed view of the intersection and observed a grey Dodge Durango turn right from Mamaroneck Avenue onto East Post Road “directly behind” the vehicle that was stopped waiting for a pedestrian to cross the street. According to Mr. Rojas, the Durango attempted to pass the smaller stopped vehicle and, in so doing, struck the left rear corner of the car, causing it to lunge forward, hitting the female pedestrian. Mr. Rojas further testified that when he *754 saw the Dodge Durango continue to “pass around” the accident, he decided to follow the vehicle and get the license plate number for the authorities. When White Plains Police Officer Garafolo arrived at the scene, he saw only one vehicle with rear end damage, its driver Alicia Rivas, and the injured pedestrian lying in the road. There were witnesses, including Mr. Rojas who gave the vehicle information to Officer Garafolo. The information on the second vehicle was radioed to area police, and within half an hour Detective Vandermealean had located the Dodge Durango driven by the defendant herein. At the time the defendant was stopped he made no statement to the authorities.
The defendant does not dispute that on October 31, 2005 his New York State driver’s license had expired. Indeed, on direct examination he explained that the reason he had come to White Plains that day was to go to the Department of Motor Vehicles’ office. Mr. Castanheira testified that he remembered going to White Plains that day and leaving by traveling down East Post Road to Westchester Avenue and the highway. He also remembered stopping at a gas station on his way home and noticed some damage to his car, but thought that “someone” hit his vehicle. The defendant remembered being stopped by the detective and arrested. He testified however that he had “no memory” of an accident. Concerned that his condition may have been triggered by an accident, he made an appointment and went to see his neurologist, Dr. LeBrun on November 1, 2005.
Defendant’s Medical Condition and “Mens Rea”
under Vehicle and Traffic Law § 600 (a) and (2) (a)
The defendant’s expert is his treating neurologist for the last five years. Dr. Yves LeBrun testified that as a result of a motorcycle accident in South America in 1998, Mr. Castanheira lost part of his frontal lobe, causing him to suffer seizures. This disorder, referred to by Dr. LeBrun as “post traumatic seizure disorder,” causes the defendant to be prone to temporary memory loss, which could be brought on by an incident such as an automobile accident. According to Dr. LeBrun, a person suffering from such a seizure could appear to be “normal” at the time of the episode, or immediately following the episode.
To control these episodes, Dr. LeBrun testified that he periodically sees Mr. Castanheira and, if appropriate, adjusts his medications based on symptoms described or observed. Indeed, Dr. LeBrun testified that Mr. Castanheira was seen by him the day *755 after the subject accident (November 1, 2005) and he appeared to be normal. Furthermore, the defendant’s blood tests indicated he had been taking his medications in the prescribed doses. Dr. LeBrun concluded that Mr. Castanheira “probably” suffered a seizure on October 31, 2005 causing his memory loss.
The defendant testified that he remembers driving in the city of White Plains on October 31, 2005, but has no memory of an accident. Mr. Castanheira testified that he believes he suffered a seizure either immediately before or just after the accident. The defendant asserts that because he did not know he was involved in an automobile accident, he cannot be held criminally liable for failure to report it. Therefore, the defense argues, that the loss of memory due to his medical condition as described, relieved him of a legal duty to report the accident on October 31, 2005 and the charges under both section 600 (1) and (2) of the Vehicle and Traffic Law must be dismissed.
The defense refers the court to two New York cases and a variety of federal and out-of-state cases addressing the issue(s) of “voluntary” conduct and culpable mental states. In People v Soe (9 Misc 3d 1069 [Just Ct, Vil of Val Stream 2005]), the defendant driver was charged with a single traffic infraction, failing to stop at a stop sign, under Vehicle and Traffic Law § 1172. At trial, the defendant testified and presented medical evidence that he suffered a seizure or “blackout” resulting in his temporary loss of consciousness (9 Misc 3d at 1170). As such, the court held that the defendant’s action of passing through the stop sign was an “involuntary act” and the charge was dismissed. While an act may be criminal without intent or knowledge, an involuntary act is not criminal. (Id. at 1073; see also, Penal Law § 15.10; People v Marzulli, 76 Misc 2d 971 [Sup Ct, App Term, 2d Dept 1973].)
Similarly, in a case closer in nature to this matter, the court dismissed that portion of a grand jury indictment charging leaving the scene of an incident as a felony under Vehicle and Traffic Law § 600 (2) (a) because the prosecution failed to instruct the grand jury on the applicability of the concepts of knowledge of leaving the scene of an incident and related concepts of intoxication and voluntariness of the defendant’s acts. (People v Hager, 124 Misc 2d 123 [Nassau County Ct 1984].)
The People refer the court to People v Lewis (162 AD2d 760 [3d Dept 1990], lv denied 76 NY2d 894 [1990]). In that matter, the Court held there was sufficient evidence presented by the prosecution to support a finding that the defendant knew or *756 had cause to know that personal injury had been caused to another person; the physical evidence at trial showed that the victim’s head had hit the defendant’s windshield, leaving human hair; and that the defendant at least had cause to know that he hit a person.
The People argue essentially that the “knowledge” requirement under Vehicle and Traffic Law § 600 is based upon the totality of the circumstances, and that the trier of facts can impute to the defendant or infer the culpable mental state of “knowing” from the defendant’s actions, witness testimony and evidence adduced at trial.
Conclusions of Law
Vehicle and Traffic Law § 600 (1) (a) (a traffic infraction) and (2) (a) (a misdemeanor) provide in pertinent part as follows:
“1. Property damage, a. Any person operating a motor vehicle who, knowing or having cause to know that damage has been caused ... to the personal property. . . of another, due to an incident involving the motor vehicle operated by such person shall, before leaving the place where the damage occurred, stop, exhibit his or her license and insurance identification card for such vehicle . . . and give his or her name, residence, including street and number, insurance carrier and insurance identification information . . . and license number to the party sustaining the damage . . .
“2. Personal injury[.] a. Any person operating a motor vehicle who, knowing or having cause to know that personal injury has been caused to another person, due to an incident involving the motor vehicle operated by such person shall, before leaving the place where the said personal injury occurred, stop, exhibit his or her license and insurance identification card for such vehicle, . . . and give his or her name, residence, including street and street number, insurance carrier and insurance identification information ... to the injured party, if practical, and also to a police officer, or in the event that no police officer is in the vicinity of the place of said injury, then, he or she shall report said incident as soon as physically able to the nearest police station or judicial officer.”
The scienter requirement for both subdivisions (1) and (2) of Vehicle and Traffic Law § 600 is the same, that is, that the culp *757 able mental state of “knowingly” does not apply to the element of “leaving the scene of the incident.” (Penal Law § 15.05 [2]; § 15.15.) Indeed, all that is required is that a driver know or have reason to know that personal injury (or property damage) has been caused. (People v Useo, 156 AD2d 739 [2d Dept 1989]; see also, People v Lovero, 7 Misc 3d 575 [Nassau Dist Ct 2005].)
In the case at bar, the weight of the credible evidence presented establishes beyond a reasonable doubt that the defendant knew or should have known that his vehicle struck the rear of the vehicle driven by Alicia Rivas, which was stopped waiting for a pedestrian to cross the street at the intersection of East Post Road and Mamaroneck Avenue, in turn, causing the stopped vehicle to be pushed into the crossing pedestrian. The impact of the collision as described by eyewitnesses, both on foot and in a stationary vehicle, was the “sound of thunder” and with such force to propel the pedestrian into the air, landing in the middle of the road or “double line” of the two direction roadway.
Further, the testimony of Dr. LeBrun is inconclusive, at least as far as the incident itself. There is no medical evidence and testimony that Mr. Castanheira suffered a seizure or “blackout” at the time of the incident, rendering his act(s) involuntary. There is no testimony to suggest that the treatment and medication prescribed by Dr. LeBrun for the defendant’s condition failed at any time on October 31, 2005.
Lastly, the defendant’s assertion that an adverse inference should be made from the prosecution’s failure to produce the driver of the other vehicle, Alicia Rivas, at trial is not fatal to the People’s case.
Accordingly, the defendant is found guilty of violating both section 600 (1) (a) and (2) (a) of the Vehicle and Traffic Law.